# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

---

SHERRIE  A. HUNTER,

                              Plaintiff,

          -vs-

COUNTY  OF  ORLEANS,  NEW  YORK  SHER-
IFF'S  DEPARTMENT,  COUNTY  OF  ORLEANS,
COREY  BLACK,  Individually  and  as  Sheriff  of
Orleans  County,  DAVID  MEYER,  PAROLE  OF-
FICER  DAVID  ZAPOROWSKI,  TINA  PRAWEL,
CO WELLS,

                              Defendants.

DECISION AND ORDER

12-CV-6173

---

## APPEARANCES

For Plaintiff:                          William M. Pottle, Jr., Esq.
                                        Law Offices of James Morris
                                        1015 Liberty Building
                                        424 Main Street
                                        Buffalo, NY 14202
                                        (716) 855-1118

For Defendants County of Orleans Sher-  Jeremy A. Colby, Esq.
iff's Department, County of Orleans, and Webster Szanyi LLP
Corey Black:                            1400 Liberty Building
                                        424 Main Street
                                        Buffalo, NY 14202
                                        (716) 842-2800

For Defendants David Meyer, Parole Of-  Tamara B. Christie, A.A.G.
ficer Zaporowski, Tina Prawel, CO Wells: New York Attorney General's Office
                                        144 Exchange Blvd., Suite 200
                                        Rochester, NY 14614
                                        (585) 546-7430

**Siragusa, J**. Pending before the Court in this civil rights case are three motions. New York State Parole Officers David Meyer ("Meyer"), Tina Prawel ("Prawel"), David Zaporowski ("Zaparowski") and Kenneth Wells ("Wells")[1] filed a motion for judgment on the pleadings on July 31, 2013, ECF No. 14, followed by a motion for summary judgment on May 30, 2013, ECF No. 28 ("Parole Officers' motion"). Investigator[2] Corey Black ("Black"), the County of Orleans and its Sheriff's Department filed a motion for summary judgment on June 3, 2013, ECF No. 29 ("County defendants' motion"). The Court heard oral argument on September 27, 2013. For the reasons stated below, the applications are granted in part, denied in part.

## BACKGROUND

The complaint contains the following factual allegations relevant to the basis for Plaintiff's claims:

> 5. On or about December 16, 2010, Sherrie A. Hunter, plaintiff, was residing at 16540 Hinds Road, Holley, New York 14470, when the above named defendants arrived at the door of her home in the early hours of the morning.

> 6. Upon information and belief, Officers Black and Prawel knocked on the front entrance door of which Sherrie A. Hunter opened the door slightly and informed the officers that she wanted to put her two large dogs that were with her back before opening the door further.

> 7. At that time and place Officers Black and Prawel then forced open and pushed the door with great physical force thereby causing the door to slam into Sherri A. Hunter and causing her to be thrown across the room and slam into a refrigerator and fall to the floor.

> 8. Upon information and belief, Officers Black and Prawel were accompanied by the other defendant officers who showed a threatening force to the plaintiff and participated in breaking down her door.

---

[1] Wells' first name is not included in the complaint, but is included in the Answer to the Complaint at 1, filed on April 27, 2012, ECF No. 8.
[2] Investigator Corey Black was erroneously named as Sheriff in the caption to Plaintiff's complaint.

9. As a result of this incident and the recklessness, carelessness and negligence of the above-named defendants, plaintiff Sherrie A. Hunter suffered severe injuries to her back and legs, and severe emotional distress and pain and permanent damage, and incurred medical expenses in amounts to be determined.

Compl. ¶¶ 5–9. Plaintiff alleges five causes of action: (1) Defendant Black's forced entry injured Plaintiff "in violation of United States Code § 1983 wherein under his power of authority under state law violated the rights of the plaintiff . . ."; (2) Defendant Black "was negligent and reckless in breaking into and trespassing" in Plaintiff's home; (3) Parole Officers Meyer, Zaporowski, Prawel and Wells, "were operating under color of state law when they violated [Plaintiff's] rights pursuant to United States Code § 1983, causing her severe injuries, mental anguish, pain and suffering and permanency all to her damages to be determined"; (4) Parole Officers Meyer, Zaporowski, Prawel and Wells, "were reckless and negligent and used excessive force in breaking into plaintiff's house causing here severe injury, mental anguish, pain and suffering and permanent injuries all in sums to be determined"; (5) "[t]he County of Orleans and its Division of the Sheriff's Department are responsible and liable for the actions of the Sheriffs and their actions alleged above…." Compl. at 10–12.

## STANDARDS OF LAW

### *Motion for Judgment on the Pleadings*

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 521 (2d Cir. 2006). The U.S. Supreme Court, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), clarified the standard to be applied to a 12(b)(6) motion:

Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to **dismiss** does not need detailed factual allegations, a Plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 1964-65 (citations and internal quotations omitted); s*ee also, ATSI Communications, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007)* ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) (Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard**,**' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.)

When applying this standard**,** a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (1999), *cert. denied*, 531 U.S. 1052, 121 S. Ct. 657, 148 L. Ed. 2d 560 (2000). On the other hand, "[c]onclusory allegations of the legal status of the defendants' acts need not be accepted as true for the purposes of ruling on a motion to dismiss." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)(*citing In re American Express Co. Shareholder Litig.*, 39 F.3d 395, 400-01 n.3 (2d Cir.1994)). As the Supreme Court clarified in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009):

Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.*, at 555, (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

*Iqbal*, 556 U.S. at 678–79.

### Summary Judgment Motion

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE § 56.11[1][a] (Matthew Bender 3d ed.). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew,* 75 F.3d

98, 107 (2d Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), *cert. denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249. "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996). Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993). The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(c)(1)(B). The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

### Section 1983

Plaintiff is suing pursuant to 42 U.S.C. § 1983, and the legal principles generally applicable to such claims are well settled:

> In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a "person" acting "under the color of state law," and (b) that the defendant caused the plaintiff to be deprived of a federal right. *See, e.g., Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir.2004).

### *Official Capacity Claims*

Under the Eleventh Amendment, State officials can be sued in their official ca-

pacities for injunctive relief, but not for money damages. *See Fulton v. Goord*, 591 F.3d

37, 45 (2d Cir. 2009) (noting that "*Kentucky v. Graham*, 473 U.S. 159, 169, 105 S. Ct.

3099, 87 L.Ed.2d 114 (1985), holds that in a suit against state officials in their official

capacities, monetary relief (unlike prospective injunctive relief) is generally barred by

the Eleventh Amendment," though such immunity may be waived  or abrogated in a par-

ticular case).

### *Personal Involvement*

> An individual cannot be held liable for damages under § 1983 "merely be-
> cause he held a high position of authority," but can be held liable if he was
> personally involved in the alleged deprivation. *See Black v. Coughlin*, 76
> F.3d 72, 74 (2d Cir. 1996). Personal involvement can be shown by:
>
> > evidence that: (1) the defendant participated directly in the alleged
> > constitutional violation, (2) the defendant, after being informed of
> > the violation through a report or appeal, failed to remedy the
> > wrong, (3) the defendant created a policy or custom under which
> > unconstitutional practices occurred, or allowed the continuance of
> > such a policy or custom, (4) the defendant was grossly negligent
> > in supervising subordinates who committed the wrongful acts, or
> > (5) the defendant exhibited deliberate indifference ... by failing to
> > act on information indicating that unconstitutional acts were occur-
> > ring. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

*Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122, 127 (2d Cir.

2004).

### *Negligence and Recklessness under New York law*

New York Pattern Jury Instructions define negligence and reckless disregard for

the safety of others as follows:

> Negligence is lack of ordinary care. It is a failure to use that degree of care
> that a reasonably prudent person would have used under the same cir-

cumstances. Negligence may arise from doing an act that a reasonably prudent person would not have done under the same circumstances, or, on the other hand, from failing to do an act that a reasonably prudent person would have done under the same circumstances....

A person acts with reckless disregard for the safety of others when (he, she) intentionally or with gross indifference to the rights or safety of others engages in conduct that makes it probable that injury will occur.

N.Y. Pattern Jury Instr., Civil, 2:10 & 2:275.2 (3d ed. 2013).

## ANALYSIS

### Motion for Judgment on the Pleadings – Third Cause of Action[3]

Turning to the motion for judgment on the pleadings, ECF No. 14, the parole officers[4] assert that Plaintiff's third cause of action should be dismissed because Plaintiff "failed to plead any specific facts supporting any deprivation of federal right." Mem. of Law at 2, Jul. 31, 2013, ECF No. 14-1. As stated above, the third cause of action alleges that Parole Officers Meyer, Zaporowski, Prawel and Wells, "were operating under color of state law when they violated [Plaintiff's] rights pursuant to United States Code § 1983, causing her severe injuries, mental anguish, pain and suffering and permanency all to her damages to be determined." Compl. ¶ 15. At oral argument, Plaintiff's counsel clarified that he meant to allege that the parole officers violated his client's Fourth and Fourteenth Amendment rights.

The seventh paragraph of the complaint, quoted above, alleges that Plaintiff was telling Investigator Black and Parole Officer Prawel to wait while she secured the dogs when those two officers forcibly entered the house, which it is alleged caused Plaintiff's

---

[3] Counsel for the parole officers conceded at oral argument that by filing a motion for summary judgment after having filed a motion for judgment on the pleadings, the motion for judgment on the pleadings was most likely moot.

[4] In a reply declaration, counsel for the parole officers asked that the motion be considered by the Court on behalf of all the parole officers, including Wells, about whom defense counsel contends there remains a factual issue as to proper service. Christie Decl. at 2 n.1, Sept. 7, 2013, ECF No. 19.

injuries. Thus, the allegation is that the officers forcibly entered the home while acting in their capacities as State officials.

> The terms of § 1983 make plain two elements that are necessary for re-covery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' of the United States. Sec-ond, the plaintiff must show that the defendant deprived him of this consti-tutional right 'under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory.' This second element requires that the plaintiff show that the defendant acted 'under color of law.'

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970). The inference from the impre-cisely drafted third cause of action is that the two named officers violated Plaintiff's rights "secured by the Constitution and laws," of the United States. *See* 42 U.S.C. § 1983 (specifically allowing a cause of action only for deprivations of constitutional and Federal statutory rights). Therefore, the complaint's third cause of action plausibly al-leges a claim against Prawal and Black. However, as discussed below, this cause of action does not survive summary judgment.

The third cause of action also names parole officers Meyer, Zaporowski and Wells. Nevertheless, the complaint does not allege any personal involvement by those defendants. Therefore, parole officers Meyer, Zaporowski, Prawel and Wells are entitled to judgment on the third cause of action.

***Motion for Judgment on the Pleadings – Fourth Cause of Action***

In their reply memorandum, the parole officers raise the argument that Plaintiff's claim sounds in negligence and is, therefore, insufficient to trigger Fourth Amendment implications. Plaintiff's response concedes that the fourth cause of action is one for neg-ligence: "The third cause of action is the 1983 claim and the fourth one is a separate cause of action in negligence that supports a Section 1983 claim." Pl.'s Mem. of Law,

Aug. 29, 2013, ECF No. 17. In her responsive memorandum of law, Plaintiff argues that although the fourth cause of action was not intended as a Federal claim, should subsequent discovery disclose that excessive force was used, the fourth cause of action would raise a plausible claim under the Fourth Amendment.

The Court construes the fourth cause of action as one sounding in negligence under New York law.[5] To the extent Plaintiff has argued that it may become a Fourth Amendment claim, the law does not permit speculative causes of action. *See Ramey v. District 141, Intern. Ass'n of Machinists and Aerospace Workers*, 378 F.3d 269, 278 (2d Cir. 2004 ("we do not permit speculative claims."). Therefore, to the extent that the fourth cause of action could be construed as a constitutional claim under 42 U.S.C. § 1983, the Court will grant judgment on the pleadings to the parole officer defendants for such theory of recovery.

**Motions for Summary Judgment**

In addition to bringing a motion for judgment on the pleadings, the parole officer defendants have also moved, pursuant to Federal Rule of Civil Procedure 56, "for judgment dismissing the complaint in its entirety as to them…." Notice of Motion, May 20, 2013, ECF No. 28. Also pending is the County defendants' motion for summary judgment filed on June 3, 2013, ECF No. 29. Discovery in the case closed on April 15, 2013. Letter Order Amending Scheduling Order, Feb. 6, 2013, ECF No. 21.

**County Defendants' Motion**

Turning first to the County defendants' motion for summary judgment, they contend that Plaintiff has conceded the point that the Sheriff's Department is not an entity

---

[5] The New York Pattern Jury Instructions contemplate torts arising out of negligence and gross negligence or willful misconduct. The Court need not decide here whether the alleged conduct constituted negligence, recklessness, gross negligence, or willful misconduct.

subject to suit, and that the official capacity claims must be dismissed as redundant. The Court agrees, and those claims are dismissed.

The County defendants argue that Plaintiff's negligence claim must also be dismissed under the doctrine of governmental immunity. Defendants cite to *McLean v. City of New York*, 12 N.Y.3d 194, 202 (2009) in which the Court of Appeals stated, "a public employee's discretionary acts 'may not result in the municipality's liability even when the conduct is negligent…'" (quoting *Lauer v. City of New York*, 95 N.Y.2d 95, 99–100 (2000). Defendants also rely on *Henry-Lee v. City of New York*, 746 F. Supp. 2d 546, 564 (S.D.N.Y. 2010), in which the district court, addressing the holding in *McLean*, wrote:

> Under New York law, a municipality "is not liable for the negligent performance of a governmental function unless there existed 'a special duty to the injured person, in contrast to a general duty owed to the public.'" *McLean v. City of New York*, 12 N.Y.3d 194, 199, 905 N.E.2d 1167, 878 N.Y.S.2d 238 (2009) (quoting *Garrett v. Holiday Inns, Inc.*, 58 N.Y.2d 253, 261, 447 N.E.2d 717, 460 N.Y.S.2d 774 (1983)). Such a special duty arises when there exists a special relationship between the governmental entity and the plaintiff. *Id.* A special relationship exists in three circumstances: "'(1) when the municipality violates a statutory duty enacted for the benefit of a particular class of persons; (2) when it voluntarily assumes a duty that generates justifiable reliance by the person who benefits from the duty; or (3) when the municipality assumes positive direction and control in the face of a known, blatant and dangerous safety violation.'" *Id.* (quoting *Pelaez v. Seide*, 2 N.Y.3d 186, 199, 810 N.E.2d 393, 778 N.Y.S.2d 111 (2004)).

*Henry-Lee*, 746 F. Supp. 2d at 564. The Court agrees that no evidentiary proof in admissible form shows a special relationship between Defendants and Plaintiff here, nor are there allegations fitting the other two categories described in the quoted language, above. Therefore, the County defendants are entitled to judgment on the second cause of action alleging negligence against Investigator Black.

The fifth cause of action is treated by Defendants as an attempt to plead a *Monell* claim. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The County defendants argue that Plaintiff's claim against the County should be dismissed as it seeks to impose liability solely on the theory of respondeat superior. The fifth cause of action alleges that, "[t]he County of Orleans and its Division of the Sheriff's Department are responsible and liable for the actions of the Sheriffs and their actions [sic] as alleged above and demands judgment against the County of Orleans for her injuries and damages, pain and suffering in an amount to be determined." Compl. ¶ 20. Nothing submitted in opposition to the motion shows a County policy or custom which, itself, violated Plaintiff's rights under the Constitution or laws of the United States. The Court rejects Plaintiff's argument that Investigator Black owed her a special duty not to violate her constitutional rights. Pl.'s Mem. of Law at 13–14, Jul. 1, 2013, ECF No. 32. Therefore, the County is entitled to judgment on the fifth cause of action.

Finally, the first cause of action alleges that Investigator Black "forced entry into the plaintiff's residence injuring her all in violation of United States Code § 1983." Compl. ¶ 11.[6] Defendants treat this as a Fourth Amendment excessive force claim. Assuming for the sake of argument that Plaintiff was "seized" within the meaning of the Fourth Amendment, the objective reasonableness standard would apply with regard to the force used by whoever pushed the door. The foundation for an excessive force claim arising out of an arrest is the Fourth Amendment right "'to be secure in their per-

---

[6] The Court pointed out to Plaintiff's counsel during oral argument that "§ 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979)". *Graham v. Connor*, 490 U.S. 386, 393–94 (1989).

sons ... against unreasonable ... seizures.'" *Graham v. Connor*, 490 U.S. 386, 394

(1989) (quoting U.S. Const. amend. IV). In *Graham*, the Supreme Court explained that,

> proper application [of this standard] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.
>
> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Graham,* 409 U.S. at 396–97 (quotation marks and citations omitted).

Investigator Black claims he did not push the door at all, and cites to several witnesses who corroborate his version. Further, he points to Plaintiff's deposition testimony in which she stated that she does not know who pushed the door open.

Plaintiff, relying on the Ninth Circuit case of *Rutherford v. City of Berkley*, 780 F.2d 1444 (9th Cir. 1986), contends that it is sufficient simply for her to identify the officers who were present and let the jury sort out which among them is liable for her injuries. Pl.'s Mem. of Law at 14. *Rutherford*'s authority is questionable. *See Alexander v.*

*City & County of Honolulu P.D.*, No. 06-00595 JMS/KSC, 2007 U.S. Dist. LEXIS 72939 (D. Hawaii Sept. 28, 2007) ("'Rutherford is in some respects no longer good law because it analyzed the excessive force claim under the substantive due process rubric that was supplanted by the Fourth Amendment approach set forth in *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L.Ed.2d 443 (1989).'"). In *Rutherford*, the Ninth Circuit stated, in relevant part:

> While Rutherford could not specifically state whether defendants Officers Houpt, McBride or Hood punched or kicked him, he did testify that they were among the five or six officers who were surrounding him while he was being beaten and that he saw each of their faces while he was being beaten. These three officers agreed that they were among the five or six officers who detained, arrested and handcuffed Rutherford, but denied punching or kicking Rutherford. From this evidence, a jury could reasonably infer that the named officers were participants in punching or kicking Rutherford. By declining to give Rutherford the benefit of this inference, the district court improperly took this case from the jury. We express no opinion whether a jury would have made that inference; that decision is one for the trier of fact. Accordingly, we reverse and remand for a trial consistent with this opinion.

*Rutherford,* 780 F.2d at 1448. This decision, however, is contrary to a decision in this Court cited by Defendants: *Paul v. City of Rochester*, 452 F. Supp. 2d 223 (W.D.N.Y. 2006). In *Paul*, the Honorable David G. Larimer of this Court held:

> "Plaintiff is correct that, in certain situations, the burden must shift to each defendant to disprove his or her involvement." *Universal Calvary Church v. City of New York*, 99 Civ. 4606, 2000 U.S. Dist. LEXIS 15153, *63 (S.D.N.Y. 2000). To shift this burden, however, plaintiff must demonstrate first that each of the defendants acted tortiously. *Id.* at *64 (citing *Rutherford v. Berkeley*, 780 F.2d 1444, 1448 (9th Cir. 1986); *Grandstaff v. City of Borger*, 767 F.2d 161, 168 (5th Cir.1985); Restatement (Second) of Torts § 433B cmt. g (1965)).
>
> Here, however, plaintiff has made no such demonstration. In fact, he claims that only one officer used unreasonable force, but he cannot identify which officer that was. Plaintiff cannot even identify whether the officer was from the RPD or from Orleans County.

> Defendants Black and Drennan are entitled, therefore, to summary judg-
> ment because plaintiff has failed to prove an essential element of his
> § 1983 claim. See *Universal Calvary Church*, 2005 U.S. Dist. LEXIS at *67
> (summary judgment granted where plaintiffs were unable to identify their
> assailants among multiple defendants, and where there was no showing
> that all of the defendants engaged in tortious conduct).

*Paul*, 452 F. Supp. 2d at 228.[7]

As was the case in *Paul*, Plaintiff has alleged that four officers were involved in the forceful entry, but cannot identify who pushed open the door. Compl. ¶ 7. "[*O*]*nce plaintiff has proven each defendant acted tortiously*, the burden of proving which tortious defendant caused the particular harm or what part of the particular harm shifts to each tortious defendant." *Universal Calvary Church*, 2000 U.S. Dist. LEXIS 15153, *63–64 (emphasis added). Further, the evidentiary proof before the Court on this motion does not show that each defendant acted tortiously.

At her pretrial deposition, Plaintiff stated she resided at 157 Windsor Road with her son, Travis DeCarlo ("Travis"), his girlfriend, Carmen, and four grandchildren. Hunter Dep. 5:3–4 & 17–18, Mar. 12, 2013, ECF No. 28-2. Parole approved Plaintiff's residence for Travis. *Id.* 14:20–22. When he was released from prison and placed on parole, Travis, as a condition of his release, agreed to the following: "I will permit my Parole Officer to visit me at my residence…and I will permit the search and inspection of my person, residence and property." Conditions of Release, Sept. 13, 2011, ECF No. 34. Plaintiff stated that Travis had lived with her at that address for one year. Hunter Dep. 9:10–12. Plaintiff understood that because Travis was on parole, parole officers

---

[7] The Northern District of Indiana distinguished the holding in *Paul* by observing: "Missing from *Paul*, however, is any discussion about liability under a failure to intervene theory." *Cooper v. City of Fort Wayne*, No. 1:06-CV-161-TS, 2007 WL 1455763, *9 (N.D. Ind. May 15, 2007). No such issue is presented on the facts before the Court here.

could come to the house, and did so on more than ten occasions prior to the incident that forms the basis for her claims. Hunter Dep. 16:8–24.

Parole Officer David Meyer ("Meyer") testified at a pretrial deposition on March 14, 2013, (attached as Exhibit E to Christie Decl.), ECF No. 28-2. He stated that Travis was a parolee under his supervision for seven months. Meyer Dep. 4:22–24. Meyer had conducted multiple home visits on Travis. *Id.* 7:2–3, 9:7–8. His visit to Plaintiff's residence on December 16, 2010, was not a routine one, "but was conducted to search the house and try to locate weapons." Meyer testified he had been informed that Travis had been seen firing a rifle in his back yard and might have a gun in his house. *Id.* 17:23–18:7, 11–12. He was also asked questions about a picture showing Travis with a gun:

> Q. What other information did you have about Travis, and his posses-
> sion—possible possession of firearms?
>
> A. I have a photo that was depicting Travis with what appears to be a pis-
> tol in his waistband, and a long gun in his hand that was printed off a so-
> cial media site.
>
> Q. Was that on Facebook?
>
> A. I believe it was.
>
> Q. And was it your belief that Travis had actually posted that on Face-
> book?
>
> A. Yes.
>
> Q. Okay. And so that was in your mind a clear violation of his parole?
>
> A. Yes.

Meyer Dep. 48:2–16. Although during oral argument Plaintiff's counsel maintained that Defendants had not provided a reasonable basis for the officers' entry into his client's home, the Court disagrees.

Plaintiff stated during her deposition that on the morning of December 16, 2010, at approximately 7:00 a.m., that she was awakened by her barking dogs and observed several cars outside the front window of the house. She went to her front door, opened it about five inches and learned from one of the four people who approached the house that they had come for Travis. *Id.* 23:15–17, 22–24. She identified the four as "Meyer— Mr. Meyer, Mr. Zaporowski, Corey Black and a female." *Id.* 25:19–20.

Plaintiff testified that she said, "hold on a minute while I get the dogs." *Id.* 26:1–2. She then grabbed the harness of one, and the collar of the other, and tried to pull them away from the door. *Id.* 26:23–27:1. She further explained:

> A. Well, the dogs were heavy. One dog was 80 pounds and the other dog was 50 pounds. And I just had surgery and it was very difficult for me to try to get the dogs away from the door. As I was trying to get the dogs away from the door, the door opened up again. I said, "hold on a minute, I'm try-ing to get the dogs away from the door." Corey Black told me "if you don't get the dogs away from the door, I'm going to shoot them." I said, "hold on a minute," and I shut the door.

Hunter Dep. 27:8–17. The door was pushed open, and she pushed it back, concerned that the dogs would get out. *Id.* 28:17–19. She then described what happened next:

> A. That's when it [the door] reopened again. *Somebody* pushed it back open. I told them [sic], "hold on. I'm trying to get the dogs." That's when Corey [Black] said, "if you don't get the dogs out of the way, I'm going to shoot the dogs," or something to that effect of shooting my dogs.
>
> Q. What happened next?
>
> A. I said, "hold on, I'm trying to get the dogs." I was all alone in the kitchen with the dogs at the time.
>
> Q. Did you continue to try to get the dogs away?
>
> A. Yes.
>
> Q. Tell me what you continued to try to do?

A. I tried to get the dogs away. I was pulling them away, and the younger dog went to my left. And as he went to my left, that's when I saw the female lady go to the right of the door in front of Corey Black. She was standing behind the two—she was standing behind Mr. Wells and Mr. Zaporowski. She went from behind them over to in front of Corey Black. And at that point, that's when the door all of a sudden shoved in on me and I fell over the dogs.

Q. Do you know if somebody pushed the door opened [sic] at that point?

A. Yes.

Q. Do you know who that person was?

A. I didn't see exactly who that person was that pushed the door opened [sic]. All I know it was with great force that it knocked me over my dogs.

Hunter Dep. 28:24–30:5 (emphasis added). She sought treatment for her injuries approximately one week later. *Id.* 34:21–23.

Black testified at a pretrial deposition that he did not see any of the parole officers push open the door. Black Dep. 42:5–7. Black was the last one to enter Plaintiff's residence. *Id.* 43:2–3. Black further testified that as the officers waited on the front porch for Plaintiff to open the door, "it bec[ame] a little nerve racking for us knowing that you have a convicted felon inside a house who is quite possibly armed with weapons and you are kind of hanging out on the front porch with no cover or protection in the event that he decides to become aggressive." Black Dep. 42:17–23.

The Court's analysis begins with the fact that, "the established law allows parole officers to conduct searches of the homes of parolees without probable cause or a warrant where those searches are related to the duties of the parole officers…." *Moore v. Vega*, 371 F.3d 110, 117 (2d Cir. 2004); *see also U.S. ex rel. Santos v. New York State Bd. of Parole*, 441 F.2d 1216, 1218 (2d Cir. 1971) ("it is indisputable that the Fourth Amendment affords protection only against unreasonable searches. A search which

would be unlawful if directed against an ordinary citizen may be proper if conducted against a parolee."). In *People v. Huntley*, 43 N.Y.2d 175 (1977), the New York Court of Appeals addressed the constitutional rights of a parolee, stating:

> Where, however, as here, the search and seizure is undertaken by the parolee's own parole officer, in our view whether the action was unreasonable and thus prohibited by constitutional proscription must turn on whether the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty.

*Huntley*, 43 N.Y.2d at 181. Plaintiff relies on *United States v. Newton*, 369 F.3d 659 (2d Cir. 2004). *Newton* emphasized the New York Court of Appeals' determination that a parole officer's ability to conduct a warrantless search of a parolee's residence must be "rationally and reasonably related to the performance of the parole officer's duty." *Newton*, 369 F.3d at 666 (quoting *Huntley*, 43 N.Y.2d at 181).

In her deposition testimony, Plaintiff was asked whether she was shown a warrant:

> Q. Did you ever tell him [Black] that he couldn't come in the house?
>
> A. No. They told me that they had a search warrant.
>
> Q. Did Corey Black tell you that he had a search warrant?
>
> A. No. The parole officers told me they had a search warrant.
>
> Q. When did they tell you that?
>
> A. They told me that when they were at the door. I asked them. I wanted to see the search warrant and no one would show it to me.
>
> Q. Who was it that told you specifically that they had a search warrant?
>
> A. Zaporowski I want to say.

Hunter Dep. 98:4–18. At his pretrial deposition, Parole Officer David Zaporowski (attached to Christie Decl. as Ex. D), Mar. 14, 2003, ECF No. 28-2, was asked about

whether they had a warrant:

> Q. —you didn't have any, like, search warrant?
>
> A. No.
>
> Q. Or any kind of arrest warrant?
>
> A. No.
>
> Q. Or anything like that?
>
> A. No.

Zaporowski Dep. 52:14–20. Meyer was also asked about whether they had a warrant:

> Q. Did you have a search warrant?
>
> A. No.
>
> Q. Did you have any kind of arrest warrant or—
>
> A. No.
>
> Q. Nothing? And under what authority do you have to go into that house and search it? . . .
>
> THE WITNESS: It's part of the parolee's parole conditions. And, additionally, I received consent from Mrs. Hunter at the doorway.

Meyer Dep. 13:19–14:5. In Defendants' Reply Memorandum of Law, Jul. 12, 2013, ECF

No. 34-1, the parole officers argued that their entry into Plaintiff's home was proper:

> From plaintiff's own deposition testimony, it seems clear that she was agreeable to the parole officers entering her home for the purpose of locating Mr. DeCarlo. (Hunter Dep. Tr., pp. 16-17, 26-27) Accordingly, defendants submit that the defendants' entry into the premises cannot be a basis of a 4th amendment violation in this case.

*Id.* at 2. The Court's review of the transcript at the pages indicated by Defendants does

not clearly show that Plaintiff consented to the officers' entry into her home.

Considering what the officers knew at the time, the Court determines as a matter of law that it was objectively reasonable for them to push open the door to see what was happening and determine whether any person in the room posed a danger to them. Therefore, since the Court determines on the evidentiary proof and as a matter of law that the force used was reasonable, there is no basis for a cause of action under the Fourth Amendment.

Even if the Court were to analyze Plaintiff's claim under the Due Process Clause of the Fourteenth Amendment, the result would be the same. *See*, *Medeiros v. O'Connell*, 150 F.3d at 169 ("[I]n County of Sacramento, the Supreme Court indicated that where no seizure within the meaning of the Fourth Amendment has taken place, substantive due process analysis is appropriate.") (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 843, 118 S.Ct. 1708, 1715 (1998)). As the Second Circuit has explained,

> [t]he core of the concept of due process has always been an individual's freedom from arbitrary interference by the government. Alleged abuses of the police power are sufficiently arbitrary to rise to constitutional magnitude only when the conduct at issue "shocks the conscience." Substantive due process, enforced by section 1983, does not afford a cause of action for police negligence. Further, because the police must act in high-tension situations in haste, under pressure, and frequently without the luxury of a second chance, even an intermediate level of fault, such as recklessness, is not enough to impose constitutional liability.

*Medeiros v. O'Connell*, 150 F.3d 164, 169–70 (2d Cir. 1998) (citations and internal quotation marks omitted). The force employed to push open the door was applied in a good faith effort to ensure the officers were not surprised by Travis, a parolee whom Defendants reasonably thought was in possession of one or more firearms in violation of the conditions of his release to parole. Further, Plaintiff's injury was caused by tripping over

her large dogs, not by the door itself. In the instant case, the Court finds, as a matter of law, that Plaintiff's allegations do not support a substantive due process claim, since, even assuming that Defendants were negligent, or even reckless, in injuring Plaintiff's arm, their conduct did not approach the level of "conscience shocking" behavior.

Since the Court concludes that Defendants did not act tortiously, it decides that Plaintiff has not raised a genuine issue as to a material fact, and that Defendants have shown their entitlement to judgment. Therefore, the Court grants the County defendants' motion for summary judgment.

## CONCLUSION

ECF No. 14 and ECF No. 28 are granted, except as to the negligence claims in the fourth cause of action; and ECF No. 29 is granted, except as to the negligence claim in the second cause of action.

Investigator Black is entitled to judgment on the first cause of action under either a theory that he violated Plaintiff's Fourth Amendment right against excessive force in a seizure, or that he violated Plaintiff's Due Process right against excessive force as guaranteed by the Fourteenth Amendment.

Plaintiff's third cause of action fails to allege personal involvement by parole officers Meyer, Zaporowski and Wells, and is therefore dismissed against them. Further, although the third cause of action survives Defendants' motion for judgment on the pleadings with respect to Black, nevertheless, Black is entitled to summary judgment on the third cause of action.

Plaintiff's fourth cause of action, insofar as it may be making a Fourth Amendment claim, is dismissed.

The Orleans County Sheriff's Department is not an entity subject to suit, and is dismissed from this action. The County defendants are entitled to judgment on Plaintiff's negligence claim alleged in the second cause of action. Further, the fifth cause of action, in which Plaintiff appears to make a *Monell* claim against the County of Orleans, is also dismissed, as Plaintiff has not shown a County policy or custom violative of her rights.

The only remaining contentions are Plaintiff's New York State claim for negligence in the second and fourth causes of action. The second and fourth causes of action may go forward as to Parole Officers Meyer, Zaporowski, Prawel and Wells, and Investigator Black to the extent that they make claims for negligence under New York State law. Pursuant to 28 U.S.C. 1367(c)(3), the Court may decline to exercise supplemental jurisdiction in a case in which all the Federal claims have been dismissed and there remain only State law claims. The Court has discretion to remand these remaining claims, originally filed in State court and removed here by Defendants. *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 357, 108 S. Ct. 614, 623 (1988) ("a district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate."). Were the Court to merely dismiss the case, it is likely that the statute of limitations will have expired on the State claims. *See* N.Y. C.P.L.R. § 215 (one year statute of limitations on an action against a sheriff for acts in official capacity). Therefore, the Court will

exercise its discretion and direct that the remaining State negligence claims be remand-

ed to the New York State Supreme Court in Monroe County (Index No. 2012-2764).

Dated:   November 19, 2013
         Rochester, New York

                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge